UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DANIEL STOVALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 5:17-CV-448-GFVT-REW |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| KEITH HELTON, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

* * * * * * * * * *

At the time of case initiation, Petitioner, Daniel Stovall, was a Kentucky inmate. *See* DE #1 (Petition), at 1.[1] In 2013, a Boyle Circuit Court jury convicted him of four counts of criminal mischief 1st, three counts of burglary 3rd, and two counts of theft by unlawful taking. *See Stovall v. Commonwealth*, No. 2013-SC-788-MR, 2014 WL 7239876, at *1 (Ky. Dec. 18, 2014). The trial court sentenced him to 20 years' imprisonment. *See id.*; *see also* DE #1-1, at 70-72 (Final Judgment). On November 7, 2017,[2] Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, with a memorandum and other documents attached. *See* DE ##1; 1-1. The Court conducted an initial review of the filing and found it to appear timely and in the correct form. DE #4 (Order). Warden Helton responded. DE #6 (Response). Although Stovall had an opportunity to reply, *see* DE #4, at ¶ 8, he did not file. Having reviewed the submissions under the applicable standards, the Court **RECOMMENDS** that the District Judge **DISMISS** the

---

[1] According to the Kentucky Online Offender Lookup system, Stovall received parole on January 17, 2018. He has not notified the Court of this or updated his address, as required. *See* DE #3, at ¶ I. Indeed, Stovall has filed nothing in the case post-Petition. A parolee may yet assert § 2254 grounds. *Jones v. Cunningham*, 83 S. Ct. 373, 377 (1963).

[2] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Stovall affirmed under penalty of perjury that he executed and mailed the petition on November 7, 2017. DE #1, at 8.

petition (DE #1) **WITH PREJUDICE** and wholly **DENY** a Certificate of Appealability. Petitioner fails in all respects to justify displacing the treatment of the matter by the courts of the Commonwealth.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Kentucky Supreme Court articulated the underlying facts and procedural history:

Parksville Country Store, Hardee's BP, and Old Bridge Golf Club in Boyle County were burglarized all on the same night. Burglaries also continued into neighboring Lincoln County that night. Based on the surveillance video footage obtained from Parksville Country Store, police suspected that one black male and two white males were responsible for the burglaries. It also led police to believe that the men were driving a dark colored sport utility vehicle ('SUV'). As a result, Sergeant Sim Thacker of the Lincoln County Sheriff's Department attempted to pull over a black SUV, but the driver sped up and evaded Sergeant Thacker. Subsequently, police found the SUV abandoned, containing various stolen items from the burglarized stores. Police also found a wallet in the SUV, which contained a photograph of a young boy.

Approximately twelve hours later and one and one half miles from the abandoned SUV, [Stovall], a black male, was going from business to business attempting to obtain a ride from someone. [Stovall] eventually entered a green taxi, which drove approximately one mile before stopping to pick up a white male passenger, Joshua Johnson. Believing that these men matched the description of the burglars, Lincoln County Sheriff Curt Folger and Lancaster Police pulled the taxi over and arrested both passengers.

During the stop, Sheriff Folger noticed that the passengers were dressed the same as the burglars on the surveillance video. Sheriff Folger also discovered a photograph in Johnson's wallet which was identical to that found in the abandoned SUV. After taking [Stovall] and Johnson to the police station, law enforcement officers learned that the SUV, Johnson, and [Stovall] were all from Indiana. Police fingerprinted both suspects and, pursuant to a warrant, obtained DNA samples from [Stovall] and Johnson. [Stovall]'s fingerprints and DNA matched those on a black plastic bag and gloves found in the SUV.

[Stovall] filed a motion to suppress evidence discovered by police after his arrest on the grounds that the police illegally stopped the green taxi and arrested [him]. The trial court denied his motion, and the case proceeded to jury trial. At trial and over [Stovall]'s objection, Sheriff Folger testified that Special Deputy Hal Akers told him about [Stovall] going from business to business and entering the green taxi. Folger further testified the information provided by Akers led him to stop the taxi. [Stovall] also objected when Officer Chris Stratton testified about what he

had seen on the Parksville Country Store's surveillance video because the video was not produced in discovery or played for the jury at trial. This objection was also overruled, and [Stovall] was convicted by a jury of the aforementioned charges and sentenced to twenty years' imprisonment.

*Stovall*, 2014 WL 7239876, at *1.

On December 18, 2014, the Kentucky Supreme Court affirmed Stovall's convictions and sentence. *Id.* at *7. Stovall promptly filed an RCr 11.42 motion, circuit court denial of which the Kentucky Court of Appeals affirmed on April 21, 2017. *See Stovall v. Commonwealth*, No. 2015-CA-730-MR, 2017 WL 1437985 (Ky. Ct. App. Apr. 21, 2017).[3] The Kentucky Supreme Court denied discretionary review on October 25, 2017. DE #9-3, at 76. Remaining dissatisfied, on November 7, 2017, Stovall timely filed the current federal petition for a writ of habeas corpus. *See* DE #1.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, established a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005) (quoting *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002) (per curiam)). Specifically, the AEDPA provides,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

---

[3] Evidently, Stovall also unsuccessfully litigated a CR 60.02 motion during this period. *See* DE #1-1, at 48-49 (12/20/16 Order denying a CR 60.02 motion).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). In contrast, when a state court has not addressed in any manner the merits of a properly presented claim, the reviewing federal court assesses the claim *de novo*. *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007). A petitioner bears the burden of justifying relief. *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)).

"Under the 'contrary to' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.'" *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., opinion of the Court for Part II)). In this regard, "clearly established law under the Act encompasses more than just bright-line rules laid down by the Court. It also clearly includes legal principles enunciated in the Court's decisions." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002). At the same time, habeas review focuses on the holdings of the Supreme Court, not its *dicta* or holdings of the courts of appeals. *Williams*, 120 S. Ct. at 1523 (regarding *dicta*); *id.* at 1507 (quoting *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996)) (regarding reliance on jurisprudence from courts of appeals).

As to the "unreasonable application" clause, the Supreme Court has held that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S. Ct. at 1523. The writ may not issue solely because the state court incorrectly applied the relevant Supreme Court precedent; instead, the state court's misapplication must have been objectively unreasonable. *Id.* at 1521-23. In determining whether

the state court misapplied Supreme Court precedent, a federal court may look only to the state of

the case law "as of the time of the relevant state-court decision." *Id.* at 1523. Ultimately, the

habeas court should not grant relief "so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)

(quoting *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004)).[4]

Concerning any "unreasonable determination of the facts" theory, a federal court must

presume all determinations of factual issues by the state court to be correct unless the petitioner

rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[5] Findings of

---

[4] The Supreme Court has repeatedly cautioned courts in this Circuit about the rarity of warranted relief under § 2254. *See, e.g.*, *Jenkins v. Hutton*, 137 S. Ct. 1769, 1773 (2017) (per curiam) (bluntly stating, *e.g.*, "the Sixth Circuit was wrong"). The AEDPA standard is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)). State mishandling, under subsection (d), must essentially be inarguable. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) ("[F]ederal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."). Unless the state transgresses the clearly established *holdings* of the Supreme Court, or applies them so unreasonably as to exceed fair doubt, statute-based deference commands that the federal courts resist involvement. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) ("Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.").

[5] There is some lack of clarity concerning the interplay between §§ 2254(d)(2) and 2254(e)(1). Each distinctly assures a measure of deference to state court factual determinations. Although the Supreme Court declined to guide the interaction in *Wood v. Allen*, 130 S. Ct. 841, 845 (2010), the Sixth Circuit has said,

> With respect to § 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court-proceeding[.]"

*Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1041 (2003)); *see also McMullan v. Booker*, 761 F.3d 662, 670 & 670 n.3 (6th Cir. 2014); *Shimel v. Warren*, 838 F.3d 685, 697 (6th Cir. 2016); *Rice v. White*, 660 F.3d 242, 254 n.6 (6th Cir. 2011). In fact, the Sixth Circuit recently acknowledged that "the interplay between §

fact entitled to the presumption include "[p]rimary or historical facts found by state courts," *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), as well as factual findings made by state appellate courts based upon the trial record. *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003) (citing *Sumner v. Mata*, 101 S. Ct. 764, 769 (1981)). However, the presumption does not fully apply when, as with an ineffective assistance claim resolved on the merits, the § 2254 petition involves mixed questions of law and fact. *See Strickland v. Washington*, 104 S. Ct. 2052, 2070 (1984); *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007). In essence, while federal courts need not defer to ultimate findings regarding, *e.g.*, ineffectiveness of counsel, the "underlying facts" supporting such state court decisions still warrant deference. *Strickland*, 104 S. Ct. at 2070; *accord Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000).

Even absent an opinion articulating the state court's reasoning, a habeas court yet must determine whether the state court's decision is the result of an unreasonable legal or factual conclusion. *Harrington*, 131 S. Ct. at 784. Indeed, "a state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d). . . . Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* Unless the petitioner affirmatively shows that the state court's decision "did *not* involve a determination of the merits of his claim," such as where the opinion expressly states the claim was denied on procedural grounds, § 2254(d) applies on habeas review. *Id.* at 784-85. Where the state court resolves a petitioner's claim of error without articulating its reasons for the denial, then:

---

2254(e)(1) and § 2254(d)(2) remains unresolved." *Hawkins v. Woods*, 651 F. App'x 305, 309 n.2 (6th Cir. 2016); *see also Rice*, 660 F.3d at 254 n.6 (eschewing the opportunity to clarify "the precise interplay between § 2254(d)(2) and (e)(1)"). The (d)(2) overlay is "demanding but not insatiable." *Ayers*, 623 F.3d at 308 (quotation omitted); *see also Feldman v. Thaler*, 695 F.3d 372, 377 (5th Cir. 2012) (describing (e)(1) as a "supplement[]" to (d)(2), providing an "'arguably more deferential' standard of review for state court findings of fact") (citation omitted).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Id.* at 786; *accord Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (independent review where state court does not articulate reasoning for denial is "not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA").

If errors occurred, the reviewing court must evaluate whether they constitute "trial errors, . . . whose effect may be 'quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt,'" or "'structural defects,' which 'defy analysis by harmless error.'" *Jensen v. Romanowski*, 590 F.3d 373, 378 n.4 (6th Cir. 2009) (citing and quoting *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1717 (1993)). With "trial errors," the reviewing court evaluates directly whether the error had a substantial and injurious effect in determining the jury's verdict or other case result. *Id.* at 378. The query focuses on whether "grave doubts" exist as to the effect of error. *Id.* at 379 (citing *O'Neal v. McAninch*, 115 S. Ct. 992, 994 (1995)). If any error had little or no effect, then no habeas relief should be afforded. *Id.* However, if the reviewing court finds itself at least in "virtual equipoise" about the harmlessness of the error, the court must grant the writ. *Id.* As to "structural defects," reversal of the state-court conviction may be required without harmless error analysis. *Id.* at 378 n.4. Generally, federal habeas corpus relief does not lie for errors in the application of state law unless such errors result in the denial of a fundamentally fair trial. *See Estelle v. McGuire,* 112 S. Ct. 475, 479-80 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-

court determinations on state-law questions[.]"); *accord Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008).

## III.  ANALYSIS

Stovall raises three general grounds for relief: (1) an ineffective assistance of counsel claim concerning an alleged "failure to investigate video"; (2) Fourth Amendment claims asserting that the trial court erred in not granting a motion to suppress and in concluding that police had probable cause to arrest him; and (3) an actual innocence or insufficient evidence claim. *See* DE #1, at 5-6; *see also* DE #1-1, at 1-2. The Warden opposes relief on each ground. *See* DE #6. Stovall had the chance but did not reply. The Court has reviewed the full record, including all tendered documents and state-court video, and addresses each argument in turn.

### A.    *Ineffective Assistance of Counsel – Failure to Investigate Video*

When asserting an ineffective assistance claim, a petitioner must prove both deficient performance and prejudice. *Strickland*, 104 S. Ct. at 2064; *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence).[6] In order to prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A petitioner meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65; *see also Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (per curiam) (giving an overview of the *Strickland* test); *Padilla v. Kentucky*, 130 S. Ct. 1473,

---

[6] *Pough* was a § 2255 case (as were some other cases this Recommendation cites), but the analysis also generally applies to a § 2254 theory. *See Oliver v. United States*, 901 F. Supp. 1262, 1266 (W.D. Mich. 1995) ("Because of the similarities between the relief available under § 2254 and § 2255, case law decided under one section is generally applicable to the other.").

1482 (2010) (same). Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 104 S. Ct. at 2065; *see also Burt*, 134 S. Ct. at 17-18 (referring to "*Strickland*'s strong presumption of effectiveness").

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 104 S. Ct. at 2064. In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069.

*Strickland* does not assure perfect counsel. Rather, the Sixth Amendment requires only a lawyer that performs reasonably, under prevailing professional norms, and does not cause an injury of constitutional prominence. *See, e.g.*, *Otte v. Houk*, 654 F.3d 594 (6th Cir. 2011) ("Not every bad lawyer violates the constitution. For counsel's performance to be deemed ineffective, it must be objectively deficient and cause prejudice to the defendant.") (citing *Strickland*); *Wilson v. Sirmons*, 536 F.3d 1064, 1083 (10th Cir. 2008) ("Counsel's performance must be 'completely unreasonable' to be constitutionally ineffective, not 'merely wrong.'") (citation omitted); *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("So the threshold issue is not whether Morrow's attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

Federal courts need not defer to state court factual findings regarding the performance and/or prejudice prongs of the effectiveness analysis. However, the "underlying facts" supporting such state-court decisions warrant deference. *Strickland*, 104 S. Ct. at 2070. "The

pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 131 S. Ct. at 785. Thus, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* It is "difficult" to establish a state court's application of *Strickland* as unreasonable under § 2254(d); both standards are "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (citations omitted); *accord Woods*, 135 S. Ct. at 1376 (When reviewing claims of ineffective assistance of counsel, the Court's review "must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." (internal quotation marks removed) (quoting *Burt*, 134 S. Ct. at 13)). Habeas courts must "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Richter*, 131 S. Ct. at 788. Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Additionally, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* (citation omitted).[7]

Stovall asserts that "[t]he security system was deleted / lost and my counsel didn't investigate it and I was still found guilty with no evidence-finger prints-eye witness or anything."

---

[7] In processing this claim, given the clarity with which it ultimately fails, the Court sets aside extensive discussion of any potential procedural bars and "cut[s] to the merits here." *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011); *see also Jones v. Bowersox*, 28 F. App'x 610, 611 (6th Cir. 2002) ("In this case it is considerably easier and thus more judicially efficient to affirm on the merits than to untangle the complexities of" procedural issues.). The claim likely is subject to procedural default because Stovall did not pursue the theory through the state appellate process. *See, e.g.*, *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (recognizing that "an ineffective-assistance-of-counsel claim . . . can . . . be procedurally defaulted"). Further, he has not responded to the default argument and thus has not addressed cause or prejudice. Here, the merits end what the procedural bar surely also would terminate.

DE #1, at 5 (all as in original). He expounds, "I was charge with 3 counts of Burglary 3rd.. before trial the State stated they had 3 videos of all three burglaries on video… but at trial the state only had one video and on the video they showed you could see 2 to 3 if not 4 individuals running through a store wearing—Black hoodies-Black mask-Black gloves and Black pants… you could not even tell the race of any of them…" DE #1-1, at 1 (all as in original, with two instances of superscript removed).[8] The Warden responded. DE #6, at 15-17.

The Kentucky Supreme Court recognized that one video from the Parksville Country Store "was never produced to [Stovall], and it was not played for the jury at trial." *Stovall*, 2014 WL 7239876, at *5. The prosecution had explained that "the surveillance recording was lost or destroyed by the store owner, Jerry Sinkhorn, before the Commonwealth was able to obtain it. Sinkhorn testified at trial that he was a new owner of the store at the time of the burglary and that he was unfamiliar with the operation of the surveillance recording system. Sinkhorn explained that he inadvertently taped over or erased the pertinent video recording." *Id.* at *5-6 (noting that the prosecution had "satisfied its [state-law] obligations by calling the store owner to testify that he inadvertently lost or recorded over the surveillance footage"). "Officer Stratton . . . testified that he watched the video before it was erased. [Stovall] did not offer any evidence suggesting that the video was lost or destroyed in bad faith." *Id.* at *6 (finding no video-related error). "Additionally, the trial court permitted [Stovall] to have a missing evidence instruction, which allowed the jury to infer that the lost video would be favorable to his case if it were available." *Id.* at *6 n.1 (deeming any potential error harmless due to "the extensive amount of other evidence provided in the case, including another surveillance video that was played for the jury and DNA evidence that linked [Stovall] to items stolen from the burglarized stores"); *see also*

---

[8] To the extent this claim overlaps with the third category of claims concerning proof adequacy or actual innocence, the Court will examine it later in this Recommendation.

DE ##1-1, at 47 (pertinent jury instruction, tendered by Stovall); 11, at Oct. 16, 2013, at video

file "11h37m29s," at timestamp 11:45:00 (Judge Peckler reading the instruction to the jury).

> The Boyle Circuit Court likewise rejected this IAC argument on collateral review:

> [Stovall] argues that trial counsel failed to obtain and investigate video surveillance footage of the crime. However, [Stovall] gives no factual basis for this allegation, and in fact misstates the facts[.] Two video tapes were presented as evidence and played for the jury at trial; those same video tapes were provided to defense counsel as part of discovery. Defense counsel reviewed and was aware of the contents of that video. One video was not preserved due to a store owner inadvertently losing or recording over the surveillance footage. The trial court permitted [Stovall] to have a missing evidence instruction. . . . It is clear from the record that [Stovall] was adequately represented and trial counsel was well prepared for the introduction of the video tapes that were available.

DE #9-3, at 15.

Again, Stovall's specific charge here is that "[t]he security system was deleted / lost and

my counsel didn't investigate it[.]" The state-court record (including the trial testimony) shows

that there is no dispute that one video was indeed inadvertently "deleted / lost." The loss resulted

from the acts of the third-party shopkeeper. Kentucky's high court found no error in the trial

court's handling of the issue, and the Boyle Circuit Court, on collateral review, found no fault in

counsel's performance.[9]

The Court, likewise, perceives no ineffectiveness regarding Stovall's one-line assertion of

non-investigation by counsel. The entirety of Petitioner's argument is a factless, cursory

contention that his trial counsel "didn't investigate" the missing video. Certainly, a failure to

investigate can, in appropriate circumstances, constitute ineffective assistance. *See, e.g.*, *Towns*

*v. Smith*, 395 F.3d 251, 258-59 (6th Cir. 2005). However, here, Stovall does not detail what an

---

[9] Stovall failed to raise this ground to the Kentucky Court of Appeals during the 11.42-based appeal, denying the state appellate court an opportunity for review. *See Stovall*, 2017 WL 1437985, at *2 n.1 (noting "two additional arguments" Stovall raised in the 11.42 motion in the trial court "which are not now before us").

investigation would have uncovered, what specific steps counsel reasonably should have taken but failed to take, or why an investigation would have changed the outcome of trial. *See, e.g.*, *Vergara v. United States*, Nos. 17-CV-11883, 13-CR-20515, 2018 WL 306284, at *2 (E.D. Mich. Jan. 5, 2018). Indeed, an investigation surely would have uncovered nothing of evidentiary worth, given that proprietor Sinkhorn "inadvertently taped over or erased the pertinent video recording" due to his unfamiliarity "with the operation of the surveillance recording system." Thus, any potential further investigation by trial counsel would not have (could not have) unearthed a non-existent video. *See also* DE #11 (Conventional Filing—Trial Court Video), Oct. 14, 2013, at video file "09h28m12s" & Oct. 15, 2013, at video file "09h02m41s" (demonstrations of trial counsel's robust argumentation concerning and understanding of the video issue). Stovall presents no proof on this topic, and the Court finds no ineffectiveness concerning the missing video; this is especially so given the Kentucky courts' treatment and the applicable doubly deferential standard of review.

B.    *Fourth Amendment Claims*

Next, Stovall argues that the "trial court erred . . . when it did not grant [his] motion to suppress." DE #1, at 6. Connectedly, he asserts that the "trial court's conclusion of law that the police had probable cause to arrest [him] is incorrect." *Id.* Petitioner expounds, "Sheriff Folger state[d] that Mr. Stovall was dress[ed] like the individuals in the security video and that was the reason why he arrest[ed] Mr. Stovall… But pictures that were t[aken] of Mr. Stovall at the time of his arrest clearly show[] that Sheriff Folger was completely incorrect and he falsified his statement just for an[] arrest." *Id.*[10] The Warden responded. DE #6, at 18-23.

---

[10] These are, with liberal interpretation, Fourth Amendment claims. *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003) ("[A]ny arrest without probable cause violates the

At the Kentucky Supreme Court, Stovall argued "that the trial court improperly denied his motion to suppress evidence seized after his arrest [and] that police lacked the requisite probable cause to arrest him[.]" *Stovall*, 2014 WL 7239876, at *2. The Court, for efficiency, excerpts the high court's comprehensive discussion:

> The trial court found from Sheriff Folger and Deputy Thacker's testimony that police had discovered the abandoned SUV, which contained items that had been stolen from the burglaries earlier that night; that the police were looking for one black male and two white males in connection with the burglaries; and that, within a relatively short time period and distance from the abandoned SUV, [Stovall] had been knocking on doors looking for a ride before entering a taxi, which picked up a white male passenger a short distance away. This Court has consistently held that a law enforcement officer's testimony alone is enough to constitute "substantial evidence." *See e.g.*, *Payton v. Commonwealth*, 327 S.W.3d 468, 471-72 (Ky. 2010); *Chavies v. Commonwealth*, 354 S.W.3d 103, 108 (Ky. 2011); *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011). As such, there was substantial evidence to support the trial judge's findings of fact, and they are conclusive. There was no clear error by the trial court in regard to its factual findings.
>
> Thus, the question we must now address is whether the trial court appropriately applied its findings of fact to the law when it held that there was probable cause for [Stovall]'s arrest. To do so, we must determine whether it was proper for police to stop the taxi. The Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution protect an individual from unreasonable searches and seizures. Therefore, to conduct an investigatory stop, a police officer must have "a reasonable articulable suspicion" that criminal activity is afoot or that a person the officer encounters is wanted in connection with a completed felony. *Bauder* [*v. Commonwealth*], 299 S.W 3d [588, 591 (Ky. 2009)] (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *United States v. Hensley*, 469 U.S. 221, 229 (1985). This Court has explained:
>
>> A reasonable suspicion is more than an unparticularized suspicion or hunch. Reasonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop. Accordingly, the stop of an automobile and the resulting detention of the driver are unreasonable, under the Fourth Amendment, absent a reasonable, articulable suspicion that . . . an occupant is otherwise subject to seizure for violation of the law. The court must consider the

---

Fourth Amendment."); *see also, e.g.*, DE ##9-2, at 16 (Stovall's appeal brief grounding the arguments in the Fourth Amendment); 1-1, at 11 (prior Stovall brief doing same).

totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity.

*Bauder*, 299 S.W 3d at 591 (citing *Terry*, 392 U.S. at 27; *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)) (internal citations and quotation marks omitted).

[Stovall] asserts that the police had no reasonable, articulable suspicion to stop the taxi. He argues that the police only stopped the taxi because it contained one black male passenger and one white male passenger, and that the passengers were not doing anything illegal at the time the taxi was stopped. However, [Stovall]'s assertion ignores the totality of the circumstances. While the races of the taxi passengers was one factor that led police to make the investigatory stop, there were many others that also must be considered. *See Hampton v. Commonwealth*, 231 S.W.3d 740, 747 (Ky. 2007) (discussing that innocent behavior combined with other circumstances can amount to reasonable suspicion).

Law enforcement officers were in the midst of their investigation and in active pursuit of the suspects involved in a series of felony burglaries that occurred approximately twelve hours earlier. Video surveillance footage showed two white males and one black male burglarizing the stores. An abandoned SUV that had earlier evaded the police was discovered, and it contained various stolen items. Then, not far from the abandoned SUV, Special Deputy Akers observed a black male, [Stovall], on foot looking for a ride before getting in the taxi and soon thereafter picking up a white male passenger. Sheriff Folger testified that in his experience, it was not common for people to be seeking a taxi in that area. He also testified that Special Deputy Akers had been a Special Deputy for several years, and he had proven to be a reliable source for receiving such information.

Based on the observations and information provided by Special Deputy Akers, Sheriff Folger believed there was reasonable suspicion to perform an investigatory stop of the taxi. Sheriff Folger did not pull the taxi over based on a mere "hunch." Rather, the facts taken together indicate "at least a minimal level of objective justification for the stop." *Id.* He had a reasonable, articulable suspicion that the occupants of the vehicle were responsible for the burglaries, and, thus, subject to seizure for violation of the law. Moreover, we must give deference to Sheriff Folger's determination of reasonable suspicion:

Officers may draw on their own experience and specialized training to make inferences from, and deductions about, the cumulative information available to them that might well elude an untrained person. . . . This Court has made clear that due deference must be given to the reasonableness of inferences made by police officers.

15

*Id.* at 592 (citing *United States v. Arvizu*, 534 U.S. 266, 274-74 (2002)); *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002)). Therefore, considering the totality of the circumstances, we hold that law enforcement officers had reasonable articulable suspicion to stop the taxi.

Alternatively, [Stovall] contends that even if the stop of the taxi was lawful, the arrest that followed the stop was not. He agrees that only reasonable suspicion was needed to stop the taxi, but he asserts that probable cause was required for police to make an arrest. We first note that while we believe there was probable cause to justify [Stovall]'s arrest, we also think that this is an exception where police did not need probable cause to justify an extended detention of [Stovall]:

> The precise limits on investigatory stops to investigate past criminal activity are more difficult to define. The proper . . . test, which is grounded in the standard of reasonableness embodied in the Fourth Amendment, balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion. When this balancing test is applied to stops to investigate past crimes, we think that probable cause to arrest need not always be required . . . [W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes.

*United States v. Hensley*, 469 U.S. 221, 229 (1985).

Even assuming probable cause was required, we hold that it existed. "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal citations omitted); *see also Commonwealth v. Jones*, 217 S.W.3d 190, 196 (Ky. 2006). "Probable cause for arrest involves reasonable grounds for

16

the belief that the suspect has committed, is committing, or is about to commit an offense." *McCloud v. Commonwealth*, 286 S.W.3d 780, 785-86 (Ky. 2009).

After the taxi was stopped, Sheriff Folger was able to identify that [Stovall] and Johnson were dressed the same as the burglars were in the surveillance video. Specifically, Sheriff Folger noted that [Stovall] was wearing distinctive black athletic shoes with red and white markings that had been visible in the video. Police also discovered a photograph of a young boy in Johnson's wallet, which was identical to the photograph found in the SUV. Johnson claimed that the photograph was of his nephew.

We hold that the facts, viewed from the perspective of a reasonably objective police officer, established probable cause for Sheriff Folger to believe that [Stovall] was a participant in the burglaries. Because the stop of the taxi and the subsequent arrest of [Stovall] were both lawful, no evidence was the fruit of an illegal search or seizure. Thus, we hold that the trial court did not err in denying [Stovall]'s suppression motion.

*Id.* at *2-4.

As the Warden argues, the doctrine established by *Stone v. Powell*, 96 S. Ct. 3037 (1976), bars Stovall's attempted relitigation of the Fourth Amendment issues via § 2254. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 3052 (footnotes omitted); *see also id.* at 3052 n.37 ("hold[ing] only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review").

The Sixth Circuit, distilling the Supreme Court's guidance, has affirmed *Stone*'s continuing utility and applicability. *See, e.g.*, *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) ("Ray's Fourth Amendment claim was properly denied under *Stone* because he had an opportunity for full and fair litigation of this claim at trial and on direct appeal."). "[F]ree-

standing Fourth Amendment claims," quite simply, "cannot be raised in collateral proceedings under . . . § 2254[.]" *Id.* The Circuit could not be clearer: "*Stone v. Powell* in the main prohibits federal habeas corpus review of a state prisoner's Fourth Amendment claim." *Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013); *see also, e.g.*, *Travis v. Barrett*, No. 2:15-CV-13807, 2015 WL 6736176, at *3 (E.D. Mich. Nov. 4, 2015) ("[P]etitioner was able to present his Fourth Amendment claim to the state trial court in his pre-trial motion to suppress[.] Petitioner was later able to present his Fourth Amendment claim to the Michigan appellate courts. That is sufficient to preclude review of the claims on habeas review."); *Kirkman v. McAllister*, No. 1:13-CV-28-HSM-SKL, 2016 WL 919032, at *8 (E.D. Tenn. Mar. 7, 2016) ("[T]he *Stone* rule applies to Petitioner's claims and those claims are not reviewable."); *Ryan v. Napel*, No. 17-1615, 2017 WL 5897583, at *3-4 (6th Cir. Nov. 7, 2017) (denying certificate of appealability based on the *Stone* / *Good* bar); *Taylor v. Warden*, No. 17-3072, 2017 WL 3160465, at *1-2 (6th Cir. June 27, 2017) (same); *Hoffman v. Harris*, No. 16-3994, 2017 WL 3951852, at *2-3 (6th Cir. Apr. 5, 2017) (same); *Mendoza v. Burton*, No. 16-2195, 2017 WL 3725358, at *3-4 (6th Cir. Feb. 22, 2017) (same).

Kentucky obviously here provided Stovall "an opportunity for full and fair litigation" of his Fourth Amendment claims. That phrase, from *Stone*, "means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good*, 729 F.3d at 639. *Stone*, the Sixth Circuit has instructed, requires the Court to simply ask: "Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640. The answer here, as the record shows, is "yes." Stovall, without question, had "an available avenue . . . to present his claim to the state court." Indeed, he took full advantage of that opportunity here, raising his Fourth Amendment issues to the Boyle

Circuit Court and the Kentucky Supreme Court. *See also* DE #11 (Conventional Filing—Trial Court Video), Oct. 14, 2013, at video files "10h23m19s" and "10h57m11s" (trial court's pretrial suppression hearing).

Thus, applying the *Stone / Good* test to Stovall, as it was to Good, "is straightforward." *See* 729 F.3d at 640. Stovall "could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate [here, supreme] court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*." *Id.* Accordingly, given the Boyle Circuit Court's and Kentucky Supreme Court's careful and extensive treatment of the Fourth Amendment issues, the Court holds that the *Stone* doctrine bars Stovall's attempt to seek § 2254 relief based on the asserted Fourth Amendment grounds.

    C.    *Innocence / Adequacy*

Finally, Stovall asserts that the jury convicted him "with 'NO' evidence, 'NO' finger prints, 'NO' video." DE #1, at 6. He continues, "At trial there were one video that the state had on the 3 Burglaries, and the one video that the state had only show 2 or 3 – maybe 4 individual dress in Black hoodies, Black mack, Black paints and Black gloves… The were all completely covered up – you wouldn't even tell what nationality they were…" *Id.* (all as in original, except one instance of superscript removed). Earlier, Stovall complained that he was "found guilty with no evidence-finger prints-eye witness or anything." *Id.* at 5 (all as in original). Stovall makes other additional innocence suggestions in the attached memorandum. *See* DE #1-1, at 1-2 (complaining that a viewer could not see the "race" of the people on the video, that Kentucky "did not bring up anything that was stolen!!!," that Kentucky "never had evidence to support the charge," that the prosecutor informally commented that the jury convicted "with out evidences,"

and that Petitioner has "**been unlawfully incarcerated for the past 5 years for a crime I didn't do**…" (all as in original, except one instance of superscript removed and boldface added)). Warden Helton responded. DE #6, at 24-25.

The Court does not perceive a "credible" claim of actual innocence. *See Cleveland v. Bradshaw*, 693 F.3d 626, 632-33 (6th Cir. 2012). Presenting such a claim requires Stovall "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 633. The Court finds none of that in Stovall's submissions. Indeed, Petitioner does nothing to meaningfully develop or substantiate the innocence arguments, aside from asserting them. He presents utterly no proof, of any sort, concerning this argument. All of the claims hinge on complaints about issues known and proof existing at the time of trial. Twelve Boyle Countians found Stovall guilty of the crimes beyond a reasonable doubt, upon full consideration of the case evidence, and the seven Kentucky Supreme Court Justices unanimously affirmed. *See also Stovall*, 2014 WL 7239876, at *6 n.1 (noting the "extensive amount" of inculpatory evidence in the case, including "DNA evidence that linked [Stovall] to items stolen from the burglarized stores"). Stovall presents no convincing reason or record proof on which to call these measured conclusions into doubt.

Additionally, and more fundamentally, as the Warden argues, "the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context[.]" *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) (citing *Herrera v. Collins*, 113 S. Ct. 853, 869 (1993)). "Claims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 113 S. Ct. at 860. Thus, apart from the rejection

basis above, the Court, following the Supreme Court's commands, is simply "precluded from considering [P]etitioner's freestanding innocence claim." *Wright*, 247 F. App'x at 712; *see also, e.g.*, *Hastings v. Berghuis*, No. 16-2666, 2017 WL 5992232, at *2 (6th Cir. May 9, 2017) ("[T]his freestanding actual innocence claim is not cognizable in a non-capital habeas corpus proceeding."); *Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014) ("As the district court properly held, Thomas's freestanding claim of actual innocence . . . is not cognizable on federal habeas review."); *Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010).

Further, even if the Court liberally interpreted Stovall's petition to raise a generalized constitutional insufficient-evidence theory (based on the particular phrasing of some of his complaints), *see, e.g.*, *White v. Steele*, 602 F.3d 707, 709-10 (6th Cir. 2009) (recognizing that, under *Jackson v. Virginia*, "a conviction with insufficient evidence violates the defendant's federal due process rights"), Stovall comes nowhere close to meeting the relevant standard (even if the Court dispenses with AEDPA deference and potential procedural bars,[11] and cuts to the merits). The question is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Petitioner vaguely criticizes some of the case proof, mirroring his defensive arguments at trial, but given the DNA, video, SUV-related, and other trial proof, a rational trier of fact clearly could have (and here did) find Stovall guilty beyond a reasonable doubt. Stovall's "fingerprints and DNA matched those on a black plastic bag and gloves found in the SUV" that matched an SUV from Parksville Country Store surveillance footage and that

---

[11] Again, as stated *supra* in n.7, Stovall's failure to present and litigate such a claim in Kentucky's courts would likely bar the claim here. The Court, without weighing the bar or Stovall's failure to address procedural default, elects to dive to the dispositive merits.

"sped up and evaded" police as they "attempted to pull [it] over[.]" *Stovall*, 2014 WL 7239876, at *1.

Further (to name just two examples), Stovall's co-arrestee had a photograph in his wallet of a young boy "identical to that found in the abandoned SUV," *id.*, and Stovall donned a distinctive pair of shoes matching footwear present in certain surveillance footage. *See, e.g.*, DE #11, at Oct. 15, 2013, at video file "15h55m02s," at timestamp 16:25:00 ("That is kind of a distinctive tennis shoe. It would be kind of odd to me."); *id.* at Oct. 16, 2013, at video file "09h19m27s", at timestamp 09:54:00 (Sheriff Folger, after describing the particularities of Stovall's shoes (gesturing at the footgear physically present in court): "It was very distinctive with the picture of the video we looked at, yes."). Additionally, Mr. Sinkhorn and the Hardees / BP owner / operator testified to the value of the property stolen from each's respective store, and Sergeant Clem detailed the various items of physical evidence located in the at-issue vehicle. *Id.* at Oct. 15, 2013, at video files "09h02m41s," "10h01m27s," and "13h19m52s." As the Kentucky Supreme Court detailed and the Court's independent review of the full trial video and admitted evidence confirmed, the damning proof was "extensive." *Stovall*, 2014 WL 7239876, at *6 n.1. The Court, upon review of the trial record, easily concludes that a rational trier of fact could have convicted Stovall based on the evidence presented.

For all these reasons, Petitioner is entitled to no § 2254 relief on the speculative and unsupported innocence (or evidence sufficiency) claims.

### D.    *Evidentiary Hearing*

The Court perceives no need for a hearing relative to this petition. The motion and extensive record in the case conclusively show that Petitioner is entitled to no relief. *See* 28 U.S.C. § 2254(e)(2); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) ("[W]hen the state-court

record 'precludes habeas relief' . . ., a district court is 'not required to hold an evidentiary hearing.'" (quoting *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007))); *Williams v. Taylor*, 120 S. Ct. 1479, 1488-91 (2000); *Ivory v. Jackson*, 509 F.3d 284, 298 (6th Cir. 2007); *Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001) (concluding that an evidentiary hearing is not required under § 2254 when "the petitioner's claims are . . . without merit"). Accordingly, Stovall is not entitled to an evidentiary hearing.

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El*, 123 S. Ct. at 1039-40 (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Petitioner has not made a "substantial showing" as to any claimed denial of rights; his claims all conclusively fail. Per the above discussion, reasonable jurists would not find the Court's determinations debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.    CONCLUSION

For the stated reasons, the Court **RECOMMENDS** that the District Judge **DISMISS WITH PREJUDICE** the petition (DE #1) and **DENY** a Certificate of Appealability.

\*    \*    \*    \*    \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 2d day of March, 2018.

Signed By:

*Robert E. Wier*

United States Magistrate Judge